# REDACTED FOR PUBLIC RELEASE

**(Filed Under Seal)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| **WESTECH INTERNATIONAL, INC.,** | ) | |
| **Plaintiff** | ) | |
| **v.** | ) | **No. 07-186C** |
| | ) | **(Judge Sweeney)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

PLAINTIFF'S MOTION

FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Carolyn Callaway
CAROLYN CALLAWAY, P.C.
P.O. Box 50099
Albuquerque, NM 87181-0099
(505) 291-9774
(505) 292-0144 – facsimile
ccwes@aol.com

Attorney for Westech International, Inc.

TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS 1

TABLE OF AUTHORITIES 2

STATEMENT OF FACTS 4

STATEMENT OF THE CASE 15

STANDARD OF REVIEW 15

QUESTIONS PRESENTED 16

BACKGROUND 16

ARGUMENT 17

1. NNSA's evaluation of Westech's probable cost lacked a rational basis. 17

   A. *Security Classification Administrative Support – Addition of 0.8 FTE Consultant: $XXXXX* 19

   B. *VA Staffing – Change administrative position to SME: $* XXXXX 22

   C. *Additional FTE – Add XXXXX labor hours: $ XXXXX* 24

   D. *Escalation of wages of SCA positions - $* XXXXX 26

   E. *Increase in Subcontract costs - $ XXXXX* 27

2. NNSA penalized Westech twice for the same evaluated deficiency by decreasing Westech's technical score and also increasing Westech's probable cost. 28

3. Westech was prejudiced by the actions of NNSA. 32

CONCLUSION 33

# TABLE OF AUTHORITIES


| | Pages |
|---|---|
| **CASES** | |
| Beta Analytics International, Inc. v. United States, 67 Fed. Cl. 384 (2005) | 16 |
| Bio-Rad Laboratories, Inc., B-297553, 2006 U.S. Comp. Gen. LEXIS 232 | 31 |
| Dismas Charities, Inc. v. United States, 61 Fed. Cl. 191 (2004) | 31 |
| Foundation Health Fed. Servs., Inc., Humana Military Healthcare Servs., Inc., B-278189.3, B-278179.4, 98-CPD ¶51 | 31 |
| JWK International Corp. v. United States, 49 Fed. Cl. 371 (2001) | 19 |
| OMV Medical, Inc. v. United States, 219 F.3d 1337 (Fed. Cir. 2000) | 19 |
| University Research Co., LLC v. United States, 65 Fed. Cl. 500 (2005) | 19 |
| **STATUTES** | |
| 5 USC §706 | 16 |
| 28 USC §1491 | 15 |
| 41 USC §253a | 30, 32 |
| 41 USC §351 *et seq.* | 18, 26 |
| **FEDERAL ACQUISITION REGULATION** | |
| 48 CFR §15.101-1 | 32 |
| 48 CFR §15.404-1 | 29 |
| 48 CFR §22.1006 | 26 |
| 48 CFR §52.222-43 | 26 |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| **WESTECH INTERNATIONAL, INC.,** | ) | |
| **Plaintiff** | ) | |
| **v.** | ) | **No. 07-186C** |
| | ) | **(Judge Sweeney)** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Plaintiff, by and through counsel, and in accordance with RCFC 52.1, hereby moves this Court for an order directing entry of judgment for Plaintiff and against Defendant on the basis of the Administrative Record, as supplemented. In support of this motion, plaintiff relies on the Statement of Facts contained herein referencing the Administrative Record ("AR") and the grounds for protest discussed below.

STATEMENT OF FACTS

1. The Department of Energy ("DOE"), National Nuclear Security Agency ("NNSA") issued Solicitation No. DE-RP52-05NA99344 ("Solicitation" or "RFP") as a small business set-aside on April 18, 2005. AR 1903.

2. The Solicitation sought offers to provide Security System Services to DOE's Nevada Site Office ("NSO") under a cost plus fixed fee, completion-type contract for a three-year base period with two one-year options. AR 1903.
3. The Solicitation was amended three times. AR 1984.
4. Proposals were submitted on July 7, 2005. AR 1984.
5. Westech International, Inc. ("Westech") submitted a timely proposal. AR 1907.
6. A competitive range was established on September 22, 2006. AR 1907.
7. Westech was included in the competitive range. AR 1907.
8. Discussions were held and revised proposals were submitted on October 6, 2006. AR 1907.
9. On November 2, 2006, "information was requested regarding the number of FTEs proposed in relation to the Governments [sic] estimate of FTEs necessary for accomplishing the Statement of Work (SOW) requirements." AR 1907.
10. On November 2, 2006, NNSA issued a letter to Westech and others in the competitive range providing the Government Estimate of Full Time Equivalents ("FTE") to perform the statement of work. The Government Estimate was as follows:

| | |
|---|---|
| Program Management | 1 |
| Vulnerability Assessments | 3 |
| Operational Security/Security Classification Administrative Support/Classified Matter Staffing and Administrative Support/Other Security Support | 9 |
| Site Safeguards and Security Plan | 3 |
| Physical Fitness Training | 12 |
| Pass and Badging | 5 |
| TOTAL | 33 |

AR 1601.

11. Final proposal revisions were submitted by November 9, 2006. AR 1907.

12. On December 4, 2006, the Source Selection Authority ("SSA") determined that the offeror representing the best value to the government was PAI Corporation ("PAI.") AR 1989.

13. Award was made to PAI on December 7, 2006. AR 2077.

14. Westech requested a debrief on December 6, 2006, and an oral debrief on December 11, 2006. AR 2041, 2042.

15. NNSA provided the requested oral debrief on January 31, 2007. AR 2056.

16. The RFP's Statement of Work ("SOW") was divided into eight topics:

(i) Vulerability Assessments (VA)
(ii) Operational Security (OPSEC)
(iii) NNSA/NSO Site Safeguards and Security Plan (SSSP)
(iv) Security Classification Administrative Support
(v) Physical Fitness Training
(vi) Classified Matter Staffing and Administrative Support
(vii) Pass and Badging
(viii) Other Security Support.

AR 67-70.

17. The SOW for Vulnerability Assessments ("VA") stated:

VAs shall be performed by the Contractor's Q-cleared, Subject Matter Experts in the areas of vulnerability analysis and facility modelling. The Contractor shall perform, conduct and prepare the reports of facility modelling and VAs; conduct Table-top analyses and prepare reports of those activities; and develop force-on-force plans and scenarios for protective force operations at key NSO facilities. In addition, the Contractor shall identify critical system components to be performance tested. AR 67.

18. The SOW for Security Classification and Administrative Support stated:

The Contractor shall provide Q-cleared personnel to research, develop, draft and prepare local classification guides per year as required by NSO programmatic offices. Using data supplied by the NSO Classification Officer, they will prepare the quarterly NSO classification report to HQ. This report will encompass classification guidance provided for NSO operations, education and training statistics, document review and declassification statistics, local guide status and NSO pending classification issues. AR 68.

19. The RFP stated that the Basis for Contract Award was:

The Government intends to award one contract to the responsible Offeror whose proposal is responsive to the solicitation and is determined to be the best value to the Government. Selection of the best value to the Government will be achieved through a process of evaluating each Offeror's proposal against the evaluation criteria described below. In determining the best value to the Government, the Key Personnel, Technical Capability, and Past Performance proposal evaluation criteria are significantly more important that the Cost evaluation criteria. The evaluation criteria below are listed in descending order of importance.

**OVERALL RELATIVE IMPORTANCE OF EVALUATION CRITERIA**

| | Evaluation Criteria | Medium |
|---|---|---|
| 1. | Key Personnel | Written Information |
| 2. | Technical Capability | Written Information |
| 3. | Past Performance | Written Information/Other |
| 4. | Cost | Written |

The Cost Evaluation Criteria is significantly less important than Evaluation Criteria 1 through 3. AR 64-65.

20. The RFP stated under M.04 Technical Evaluation Criteria that:

The individual indicators which comprise the following technical evaluation criteria are listed in descending order of importance. **There are no subcriteria.** AR 65 (emphasis in original).

21. The RFP stated that for Criterion 2 – Technical Capability:

The Government will evaluate and assess the Offeror's technical capability to accomplish the SOW in support of NNSA/NSO security programs and missions. In evaluating and assessing the Offeror's technical capability, the Government will consider:

(i) The Offeror's technical approach to successfully accomplish the SOW including whether the Offeror's technical approach demonstrates a thorough understanding of any technical risks and their impact associated with performance of the contract, as well as the Offeror's approach for minimizing those risks.

(ii) The Offeror's ability to provide a highly trained professional nucleus of employees who possess the necessary skills and flexibility to perform the SOW.

(iii) The extent and strength of the Offeror's corporate experience in performing all aspects of the SOW. The Offeror's corporate knowledge and experience to successfully accomplish the requirements of the SOW will be evaluated. The extent and type of the Offeror's corporate support to its key personnel to accomplish the requirements of the SOW will also be evaluated.

(iv) The Offeror's Transition Plan to mitigate risk to continuity of operations and identification of key issues, risks, milestones and planned resolution of these to provide for a smooth transition. AR 65.

22. The RFP stated the Cost Evaluation Criteria as:

(a) The cost proposal will be used in determining the best value to the Government in accordance with M.03 of this solicitation. The cost proposal will be evaluated in accordance with FAR 15.404 to determine cost reasonableness, realism, and completeness. A significant cost deficiency or weakness, one that may cause the rejection of the offer, is defined as one that is lacking in reasonableness, realism or completeness and correction would cause a material alteration or revision of the offeror's cost proposal. An unrealistic, unreasonable, or incomplete cost proposal may be evidence of the offeror's lack of or poor understanding of the requirements of the solicitation, and thus may adversely affect the offeror's rating on the Technical Proposal criteria.

(b) For purposes of award, NNSA will determine a probably cost estimate to use as the total evaluated cost. The amount that will be used as the evaluated cost or price for purposes of the best value determination will be the sum of the proposed fee, the evaluated cost for the transition period, and the evaluated cost of the total effort (including option periods) for contract performance after the transition period.

(1) Reasonableness. The Cost Proposal will be evaluated to determine the appropriateness of the underlying assumptions and estimating techniques used to generate the proposed costs, and the consistency of those assumptions and techniques with the proposed accomplishment of the required work. The FAR, general accepted accounting practices and/or disclosed cost accounting practices and applicable standards will be considered in evaluating proposed costs.

(2) Realism. The Cost Proposal will be evaluated to determine if the proposed costs are realistic for the work to be performed, reflect a clear understanding of the SOW requirements, and are consistent with the various elements of the Offeror's Technical Proposal. Inconsistencies between the Cost Proposal and other portions of the proposal could raise concerns regarding the Offeror's understanding of the requirements and ability to perform the work for the proposed cost. Cost realism analysis will be used by the Government to determine the probable cost of each offeror's proposal in order to evaluate best value. Probable cost is determined by adjusting each Offeror's proposed costs to reflect any additions or reductions in cost elements to realistic levels based ont eh results of the cost realism analysis.

(3) Completeness. Cost proposals will be evaluated for completeness based upon the submission requirements contained in the solicitation cost instructions. In addition, the Offeror's cost proposal, including teaming partners and subcontractor(s) cost data, will be evaluated based upon the traceability of the estimate used in the Cost Proposal to the performance of the requirements as addressed in the Technical Proposals. AR 65.

23. The RFP included a Department of Labor ("DOL") Wage Determination ("WD") 1994-2331 Rev. 27 dated 5/23/2005. AR 41, 2322.

24. NNSA's Source Selection Plan for this procurement assigned weights to the evaluation criteria: Key Personnel, 45; Technical Capability, 40; Past Performance, 15; Cost, not weighted. AR 10.

25. NNSA's Source Evaluation Board ("SEB") used a consensus process to evaluate proposals. The Voting Members assigned a consensus point score for each responsive Technical Proposal using the following method:

> Step 1. Each Voting Member independently reviewed and assessed the technical and management proposal against the relevant evaluation criterion in RFP Subsection M.04 "Technical Evaluation Criteria."
>
> Step 2. As a group, the SEB compiled a consensus of the strengths, weaknesses and deficiencies for each criterion. Risks were evaluated as a component of weaknesses and deficiencies.
>
> Step 3. Based on the consensus reached in Step 2, the SEB assigned an adjectival rating for each criterion using the Adjectival Rating Definitions.
>
> Step 4. The SEB assigned to each criterion a rating score within the percentage ranges of each adjectival rating. The percentage number was then multiplied times the weight assigned to the criterion (see Subsection 3.3 Technical Criteria Weights). This numeric sum was the final numeric score for the criterion.
>
> Step 5. This process was repeated for each criterion for each Offeror. The final weighted point scores were then summed to arrive at the total point score for the technical proposal.
>
> Adjectival ratings were assigned in accordance with the following:

| Adjective | Percentage of Available Points |
|---|---|
| Excellent | 85 to 100 |
| Good | 70 to 84 |
| Marginal | 55 to 68 |
| Poor | 0 to 54 |
| Neutral (past performance only) | 69 |

AR 1907-1908.

26. The SEB rated Westech GOOD overall with a total score of XXXXX. AR 1910.

27. The SEB rated PAI as EXCELLENT overall with a total score of XXXXX. AR 1910.

28. The SEB rated Westech's Key Personnel EXCELLENT, Technical Capability GOOD, and Past Performance EXCELLENT. AR 1934.

29. The SEB's Overall Assessment of Westech's Technical Approach stated:

> Westech proposed a comprehensive approach to SSSP, Physical Fitness Training Unit, and Pass and Badging. Westech's proposed approach to OPSEC, Security Classification Administrative Support and Other Security Support generally explained what Westech would do to meet these requirements. However, Westech's approach to VAs could compromise the role of the Federal personnel in providing independent oversight of the contractor and Westech's proposed labor mix in its staffing plan is not adequate for accomplishing this SOW element. Furthermore, Westech did not clearly explain its proposed deviation to the Government estimate for four SOW elements which could adversely affect performance of these SOW elements. In addition, Westech's approach to Other Security Support to accomplish the IT/web site maintenance relies on outside M&O IT resources that may jeopardize performance of this SOW element. Westech proposed a comprehensive approach to the identification of potential risks for all SOW elements and a minimizaiton/mitigation strategy for each of the identified risks. Overall, Westech's approach significantly increases the risk of unsuccessful contract performance and therefore is considred to be a significant weakness. AR 1947.

30. The SEB directed that probable cost adjustments be made to Westech's proposed cost in the amount of $2,843,725. AR 1956.

31. The SEB added escalation to all of Westech's wage determination categories at the same rate proposed by Westech for the remaining categories (3%). AR 1956.

32. The SEB replaced Westech's proposed "VA Administrative Support – General Clerk III with a VA SME" at an increase to direct labor of $ XXXXX. AR 1956-1957.

33. The SEB increased Westech's proposed direct labor "by approximately 1.7 FTEs as follows: one-half FTE per year for CMCC, two-tenths FTE for two for the three basic years and both option years for the IT/Website category, and one FTE per year for the Security Awareness/S&S Professional Training Program Coordinator category." AR 1957.

34. The SEB applied 3% escalation to one of Westech's subcontractor's labor which was subject to the DOL wage determination and had not been escalated in the proposal for an increase of $ XXXXX in the subcontractor's price. AR 1957.

35. The subcontract to which the SEB applied labor escalation was Time-and-Materials type. AR 1637, 1724.

36. The SEB added eight-tenths FTE per year to Westech's "consultant effort, which caused an increase of 7,440 DPLH ($XXXXX) in this category." AR 1958.

37. The SEB adjusted indirect costs related to the additional direct costs in estimating the total probable cost for Westech. AR 1956.

38. The SEB used indirect rates of XXXXX for overhead, XXXXX for G&A, and XXXXX for M&S in estimating Westech's costs. AR 1867-1869.

39. The SEB stated in evaluating Westech's technical proposal for the SOW area Security Classification Administrative Support:

> Westech proposed that the SME will assist in and respond to findings associated with program self-assessments or surveys. Any findings require an involved response to resolve the findings. The SME would be required to assist in this response. Accordingly, an increase of 0.8 FTE should be added to the SME (Consultant- XXXXX) labor category for a PC adjustment to ensure adequate coverage for a total of 1 FTE. AR 1871.

40. The awardee, PAI was given credit for providing access to additional Subject Matter Experts ("SME") although they were not included in PAI's cost proposal and no probable cost adjustment was made to PAI's proposal. AR 653, 1923.

41. NNSA found the awardee PAI's proposal of 2 FTE for Security Classification Administrative Support at its two lower labor categories acceptable. AR 741.

42. In the Quantitative Evaluation dated August 18, 2006, in support of the competitive range decision, NNSA found that Westech's proposed VA staffing of 2.5 FTEs made up of Sr. VA Consultant II, Security Specialist, and Administrative Security Specialist labor categories was "adequate for performing this SOW element." AR 2498.

43. On November 2, 2006, NNSA sent Westech (and others) a letter providing the "Government Estimate of FTEs to perform the Statement of Work." AR 1601.

44. In its final proposal, Westech increased FTEs for Vulnerability Assessments to three: "a team lead who is a SME . . . in the VA process, computer modelling, and performance testing (1.0 FTE), and an Analyst . . . who is experienced in running and interpreting computer models specific to the VA process (1.0 FTE). . . . In addition, WESTECH proposes an administrative support person (1.0 FTE . . .) to provide documentation support (e.g., word processing, copying, research, distribution of documents)." AR 1620, 1642.

45. The Final Evaluation Report stated:

> Westech's Final Proposal Revision includes two SMEs and an administrative support person to accomplish VAs. The SOW, however specifies SMEs to perform VAs and the addition of an administrative support person does not qualify for fulfilling the requirement for SMEs. AR 1944.

46. In August 2006, the evaluators discussed the Independent Government Cost Estimate ("IGE") and noted that:

> The SEB did not rely on the IGE for several reasons. First, it was developed based on historical costs incurred by a large business contract, Wackenhut Services Incorporated (WSI) during FY2004. Second, two functions outlined in the IGE, VA, and SSSP, were historically performed by federal personnel. The estimate for these functions is based on broader assumptions as to number of FTEs required, since there is not definitive history of actual hours performed. Travel and program management were not included in the IGE. Also, unique accounting practices and business structures among offerors must be considered. AR 2495, 2498.

47. In December 2006, the evaluators noted:

> The Government Estimate was adjusted based upon Government answers to pre-proposal questions to the Offerors for Physical Fitness and Pass and Badging, and includes an estimate for Program Management and Travel. Therefore, the revised Government Estimate provides an estimate for the overall number of FTEs appropriate for meeting the SOW requirements. . . . The Government Estimate for total FTEs to perform the SOW was provided to all Offerors in the competitive range to allow the SEB to make cost realism adjustments if necessary. AR 1870.

48. Westech's final proposal noted that it had reviewed the requirements and believed the proposed staffing was adequate because of its practice in cross-training its employees to cover multiple tasks and based on its successful performance on other contracts using these techniques. AR 1620-24.

49. Westech was the highest rated offeror in Criterion 3 - Past Performance. AR 1911.

50. NNSA rated 11 relevant Westech contracts and found eight to be "Significant Strengths" and three to be "Strengths". AR 1952-1955.

51. NNSA evaluators stated:

> Westech proposed 6.2 FTEs total for all four of these elements deviates from the Government Estimate. Westech did not substantiate this deviation in accordance with its technical approach during discussions as the SEB request in a letter

dated November 2, 2006. Therefore a PC adjustment should be made to increase labor hours in these three SOW elements. AR 1872.

52. The Defense Contract Audit Agency ("DCAA") discussed the "non-escalation of wage determination rates" with NNSA's requestor of the audit and did not provide a cost-impact for possible escalation. AR 1609.

53. Westech based its proposal on the most recent Wage Determination for the Las Vegas area, not the Wage Determination included in the Solicitation. AR 1609, 1664.

54. The Source Selection Authority ("SSA") stated:

> Westech did not clearly explain its proposed deviation to the Government staffing estimate to accomplish four elements of the Statement of Work. Accordingly, I am concerned that Westech's shortfall in its proposed staffing without adequate explanation could adversely affect successful performance of these SOW elements. . . .
>
> I find that Westech's overall technical approach increases the risk of unsuccessful contract performance. Specifically, Westech's labor understaffing, without adequate explanation, is a very serious concern of mine. AR 1987.

55. Westech's final offer was the lowest offer in the competitive range. AR 1910.

56. Westech's final offer adjusted to NNSA's estimate for probable cost was the lowest in the competitive range. AR 1910.

STATEMENT OF THE CASE

This post-award bid protest is brought by Westech International, Inc. whose offer under the Solicitation was the lowest in the competitive range both as proposed and after NNSA adjusted its cost estimate upward. Westech maintains that NNSA made adjustments to Westech's probable cost without a rational basis for such adjustments. Westech further maintains that NNSA penalized Westech twice for the same perceived

deficiency in staffing: once by downgrading Westech's technical score and again by evaluating Westech at the higher probable cost which included adding the staff by which NNSA believed Westech fell short. Westech seeks a permanent injunction against the awardee's performance of the contract, re-evaluation of offers and a new award decision which conforms to the facts and the law.

## STANDARD OF REVIEW

This Court has jurisdiction of post-award bid protests under 28 USC §1491(b)(1). This statute requires that the Court review agency decisions in accordance with the standards of the Administrative Procedure Act, 5 USC §706, which requires that the Court "hold unlawful and set aside agency action, findings and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . ." The focal point for judicial review should be the administrative record already in existence. Beta Analytics International, Inc. v. United States, 67 Fed. Cl. 384, 394 (2005). A motion for judgment on the administrative record examines whether the agency, given all the disputed and undisputed facts appearing in the record, acted arbitrarily, capriciously, or contrary to law. Id. "If arbitrary action is found as a matter of law, the Court will then decide the factual question of whether the action was prejudicial to the bid protester." Id. The Court must determine whether the procurement official's decision lacked a rational basis. Id. at 395.

## QUESTIONS PRESENTED

1. Did NNSA's estimate of Westech's probable cost have a rational basis?

2. Was there a rational basis to justify NNSA's penalizing Westech twice for one perceived shortcoming in its proposal?
3. Was Westech prejudiced by NNSA's actions?

## BACKGROUND

The Department of Energy ("DOE"), National Nuclear Security Agency ("NNSA") issued Solicitation No. DE-RP52-05NA99344 ("Solicitation" or "RFP") as a small business set-aside on April 18, 2005. AR 1903. The Solicitation sought offers to provide Security System Services to DOE's Nevada Site Office ("NSO") under a cost plus fixed fee, completion-type contract for a three-year base period with two one-year options. AR 1903. The Solicitation was amended three times. AR 1984. Proposals were submitted on July 7, 2005. AR 1984. Westech International, Inc. submitted a timely proposal. AR 1907. A competitive range was established on September 22, 2006. Id. Westech was included in the competitive range. Id. Discussions were held and revised proposals were submitted on October 6, 2006. Id. On November 2, 2006, "information was requested regarding the number of FTEs proposed in relation to the Governments [sic] estimate of FTEs necessary for accomplishing the Statement of Work (SOW) requirements." Id. Final proposal revisions were submitted by November 9, 2006. Id. The Source Evaluation Board ("SEB") evaluated the proposals and made adjustments to probable cost. The SEB added $2,843,725 to Westech's final proposed cost as its estimate of Westech's probable cost. AR 1956.

On December 4, 2006, the Source Selection Authority determined that the offeror representing the best value to the government was PAI Corporation ("PAI.") AR 1989. Award was made to PAI on December 7, 2006. AR 2077.

## ARGUMENT

### 1. NNSA's evaluation of Westech's probable cost lacked a rational basis.

Westech offered by far the lowest Final Proposed Cost of the four companies in the competitive range. AR 1985. Westech at $ XXXXX was $ XXXXX below the next lowest offer, that of the awardee PAI. Id. Even based on NNSA's probable cost estimates, Westech at $ XXXXX was $ XXXXX lower than PAI. Id. In its probable cost analysis, NNSA added $ XXXXX to Westech's final proposed cost with fee of $ XXXXX. AR 1956. Of this amount, $ XXXXX[1] was to increase the participation of a consultant from 20% to 100%; $ XXXXX[2] was the increase in cost of substituting a VA Subject Matter Expert ("SME") for an administrative person; and $ XXXXX[3] was to add XXXXX labor hours to match the government estimate. Another $ XXXXX[4] was added to escalate wages for

---

1 Increase in Consultant Cost: $ XXXXX (7,440 hours x $ XXXXX /hour)
M&S at 3%: $ XXXXX
Total: $ XXXXX = Cost of increasing consultant to full time

2 Labor: $ XXXXX
Overhead at XXX %: $ XXXXX
Subtotal: $ XXXXX
G&A at XXX %: $ XXXXX
Total: $ XXXXX = Cost of changing VA admin to VA SME

3 Labor: $ XXXXX
Overhead at XXX%: $ XXXXX
Subtotal: $ XXXXX
G&A at XX%: $ XXXXX
Total: $ XXXXX = Cost of Additional FTE

4 Labor Escalation: $ XXXXX
Overhead at XXX %: $ XXXXX
Subtotal: $ XXXXX
G&A at XXX %: $ XXXXX

Westech's employees covered by the Service Contract Act, 41 USC §351 *et seq.*, ("SCA") at 3%. The final portion of $ XXXXX[5] was for increase to a subcontractor's cost for escalation applied to SCA positions.[6] AR 1956-58.

In order to overturn a cost realism decision, a plaintiff must demonstrate that the choice made by the agency had no rational basis. University Research Co., LLC v. United States, 65 Fed. Cl. 500, 509 (2005), *citing* JWK International Corp. v. United States, 49 Fed. Cl. 371, 393 (2001). The analysis must show that the agency took into account the information available and did not make "irrational assumptions or critical miscalculations." Id., *citing* OMV Medical, Inc. v. United States, 219 F.3d 1337, 1344 (Fed. Cir. 2000).

NNSA's adjustments to Westech's costs made irrational assumptions and critical miscalculations and failed to take into account information available as discussed below.

A. *Security Classification Administrative Support – Addition of 0.8 FTE Consultant: $* XXXXX

In the Security Classification Administrative Support task, Westech proposed 1.0 FTE for a Classification Support person and 0.2 FTE for a Subject Matter Expert

---

Total: $ XXXXX = Cost of 3% labor escalation on SCA positions

[5] Subcontract Cost: $ XXXXX
M&S at XXX%: $ XXXXX
Total: $ XXXXX = Cost of 3% labor escalation on subcontract SCA positions

[6] The total of these five increases is slightly less ($196) than the total probable cost shown and probably arises from NNSA's and Westech's use of a slightly higher overhead factor for CY 2007 than for the remaining years of the contract (XXXXX % in 2007 versus XXXXX % for the remainder.)

consultant. NNSA found that 0.2 FTE of a SME was inadequate and raised this to 1.0 FTE. AR 1871. As a justification for this, NNSA stated:

> Westech proposed that the SME will assist in and respond to findings associated with program self-assessments or surveys. Any findings require an involved response to resolve the findings. The SME would be required to assist in this response. Accordingly, an increase of 0.8 FTE should be added to the SME (Consultant- XXXXX) labor category for a PC adjustment to ensure adequate coverage for a total of 1 FTE.

AR 1871. While Westech did offer the services of its consultant to assist in self-assessments, that requirement is not found in the Statement of Work. The SOW for this task states in its entirety:

> 4. Security Classification Administrative Support
>
> The Contractor shall provide Q-cleared personnel to research, develop, draft and prepare local classification guides per year as required by NSO programmatic offices. Using data supplied by the NSO Classification Officer, they will prepare the quarterly NSO classification report to HQ. This report will encompass classification guidance provided for NSO operations, education and training statistics, document review and declassification statistics, local guide status and NSO pending classification issues.

AR 68. Self-assessments are not included in this description of the work to be performed. Because Westech proposed Mr. XXXXX as a part-time consultant, it is reasonable to assume that he would be available for additional assignments should NNSA desire to add such work. Westech's proposed costs should not have been increased for Mr. XXXXX and Westech was prejudiced thereby. The awardee, PAI, on the other hand was given credit for providing access to additional SMEs although they were not included in PAI's cost proposal and no probable cost adjustment was made to PAI's proposal. AR 653, 1923. Westech was treated differently from the awardee in the evaluation of access to highly qualified personnel on an as-needed additional basis. Without the addition of $ XXXXX to Westech's proposal for these additional consultant

hours, Westech's probable cost – without other adjustments – would have been $ XXXXX lower than PAI's probable cost and would probably have been the best value offer.

Even if NNSA reasonably believed that 0.8 FTE was required to adequately cover this area of the SOW, there is no indication whatsoever that it would be rational to make that additional 0.8 FTE a highly paid consultant. AR 1958. In contrast, NNSA found the awardee PAI's proposal of 2 FTE at its two lower labor categories acceptable. AR 741. The average hourly rate for the higher paid of PAI's two employees for the five years of the contract is $XXXXX. AR 656-8. Using PAI's proposed labor rate and Westech's indirect rates, the burdened labor rate for this employee would be $ XXXXX /hour.[7] AR 661. Had NNSA used this rate for the additional 0.8 FTE the total added to Westech's probable cost would have been $ XXXXX[8] or over $ XXXXX less than NNSA added.

Had NNSA used a reasonable rate for its estimate of additional costs in this category, Westech's proposal would have been almost $ XXXXX million[9] lower than that of the next highest offeror. An analysis of best value to the government on this basis would likely have found that Westech presented the best value. Westech was prejudiced by NNSA's unreasonable addition of 7,440 hours at a rate more than 2.5 times a reasonable rate for the position. NNSA had available information about the

---

[7] $ XXXXX /hour + Overhead at XXXXX % + G&A at XXXXX %

[8] 7440 hours x $ XXXXX /hour

[9] $ XXXXX for NNSA's probable cost + $ XXXXX for change in labor rate for .8 FTE

reasonable cost of a qualified person in this position and had no rational basis for increasing Westech's cost by using a highly-paid consultant's rate.

B. *VA Staffing – Change administrative position to SME: $* XXXXX.

In the Quantitative Evaluation dated August 18, 2006, in support of the competitive range decision, NNSA found that Westech's proposed VA staffing of 2.5 FTEs made up of Sr. VA Consultant II, Security Specialist, and Administrative Security Specialist labor categories was "adequate for performing this SOW element." AR 2498. On November 2, 2006, NNSA sent Westech (and others) a letter providing the "Government Estimate of FTEs to perform the Statement of Work." AR 1601. This estimate showed three FTEs for Vulnerability Assessments. Id. In accordance with this estimate, Westech increased FTEs for Vulnerability Assessments to three: "a team lead who is a SME . . . in the VA process, computer modelling, and performance testing (1.0 FTE), and an Analyst . . . who is experienced in running and interpreting computer models specific to the VA process (1.0 FTE). . . . In addition, WESTECH proposes an administrative support person (1.0 FTE . . .) to provide documentation support (e.g., word processing, copying, research, distribution of documents)." AR 1620, 1642. That is, Westech increased its VA staffing to 3 FTEs as shown on the Government Estimate.

Nevertheless, when NNSA prepared its Final Evaluation Report, Westech was downgraded for not providing three SMEs. As stated in the Report:

> Westech's Final Proposal Revision includes two SMEs and an administrative support person to accomplish VAs. The SOW, however *specifies SMEs to perform VAs* and the addition of an administrative support person does not qualify for fulfilling the requirement for SMEs.

AR 1944 (emphasis added.) While the Statement of Work states that "VAs shall be performed by the Contractor's Q-cleared, Subject Matter Experts" the number of those experts is nowhere specified. AR 67. In fact, the offerors were repeatedly advised to use their best judgment to estimate staffing. AR 2398, 2408, 2415, 2479. In August, NNSA found two experts and one half an administrative person adequate for this task. AR 2498. In December, without explanation, NNSA now found this arrangement deficient, even though there had been no change to the Statement of Work.

On information and belief, Vulnerability Assessments are performed by teams of personnel drawn from other contractors and from the government. The VAs are planned, managed, and followed-up by the VA personnel on this contract. Westech chose to allocate the administrative functions to an administrative person thereby freeing up the two technical personnel to focus on conducting VAs.

NNSA erred in not advising Westech that only SMEs would be acceptable in its November 2, 2006, letter after having urged offerors to make their best estimates of what would be required to perform the work. NNSA does not articulate a basis for changing its opinion about the necessary staffing between August and December 2006. In addition, NNSA, rather than simply downgrading Westech's proposal for its perceived deficiency, compounded its error by increasing Westech's cost by $ XXXXX to convert an administrative person to a SME. AR 1867. Westech was prejudiced by this unreasonable conversion. If NNSA had found Westech's VA staffing acceptable in December as it had in August, then Westech's offer would have been $ XXXXX million lower than the next highest offer. Such a difference in estimated cost should have changed the best value determination.

C. *Additional FTE – Add* XXXXX *labor hours: $* XXXXX.

NNSA repeatedly advised offerors that they should come up with their best estimates for staffing. AR 2398, 2408, 2415, 2479. In August 2006, the evaluators noted that

> The SEB did not rely on the IGE for several reasons. First, it was developed based on historical costs incurred by a large business contract, Wackenhut Services Incorporated (WSI) during FY2004. Second, two functions outlined in the IGE, VA, and SSSP, were historically performed by federal personnel. The estimate for these functions is based on broader assumptions as to number of FTEs required, since there is not definitive history of actual hours performed. Travel and program management were not included in the IGE. Also, unique accounting practices and business structures among offerors must be considered.

AR 2495, 2498. Sometime later, however, NNSA revised its government estimate:

> The Government Estimate was adjusted based upon Government answers to pre-proposal questions to the Offerors for Physical Fitness and Pass and Badging, and includes an estimate for Program Management and Travel. Therefore, the revised Government Estimate provides an estimate for the overall number of FTEs appropriate for meeting the SOW requirements. . . . The Government Estimate for total FTEs to perform the SOW was provided to all Offerors in the competitive range to allow the SEB to make cost realism adjustments if necessary.

AR 1870. Westech adjusted its FTE for Physical Fitness and Pass and Badging. Based on its experience performing similar work on other contracts, however, Westech believed that it could accomplish the work for four of the SOW areas grouped together by NNSA with 6.5 FTE rather than the 9.0 of the Government Estimate. NNSA added approximately 2.5 FTE to Westech's estimate by adding 0.8 FTE for the consultant discussed above and XXXXX hours distributed to 1.7 FTE in Classified Matter Staffing and Administrative Support (0.5 FTE), Security Awareness/S&S Performance Training Program Coordinator (1.0 FTE), and IT/Website support (.15 FTE). AR 1956-1959

NNSA treated the Government Estimate as a requirement akin to having identified a required number of labor hours in the Solicitation. The Solicitation, however, did not specify the required hours. NNSA's November 2, 2006, letter advised offerors to substantiate "deviations from your staffing summary against the above estimate." AR 1601. Westech explained in its final proposal that it had reviewed the requirements and believed the proposed staffing was adequate because of its practice in cross-training its employees to cover multiple tasks and based on its successful performance on other contracts using these techniques. AR 1620-24. Westech was the highest rated offeror in Past Performance. AR 1911. NNSA rated 11 relevant Westech contracts and found eight to be "Significant Strengths" and three to be "Strengths". AR 1952-1955. NNSA failed to take into account Westech's successful performance of these similar contracts in evaluating Westech's proposed staffing. Instead, NNSA mechanically substituted its own Government Estimate figures. As stated by the evaluators:

> Westech proposed 6.2 FTEs total for all four of these elements deviates from the Government Estimate. Westech did not substantiate this deviation in accordance with its technical approach during discussions as the SEB request in a letter dated November 2, 2006. Therefore a PC adjustment should be made to increase labor hours in these three SOW elements.

AR 1872. NNSA unreasonably evaluated Westech's proposal in this regard. NNSA's unreasonable increase of $ XXXXX in Westech's probable cost prejudiced Westech. Had NNSA reasonably evaluated this element, Westech's proposal would have been over $ XXXXX million lower than that of the next higher offeror, and would likely have been the best value to the government.

D. *Escalation of wages of SCA positions - $* XXXXX

NNSA increased Westech's labor costs by $ XXXXX by applying 3% escalation to labor categories covered by the Service Contract Act. AR 1869, 1956. Westech had chosen not to escalate these positions, relying instead on the changes in Wage Determinations to determine the appropriate increases for these positions. AR 1956, 1667. Had this been a fixed price contract, such escalation would have been excluded. 48 CFR §§22.1006(c), 52.222-43(b). Because this proposal was for a cost type contract, it would probably have been prudent to include some reasonable escalation to reflect anticipated increases in the Wage Determination. NNSA's choice of 3% was not discussed with Westech and has no rational basis in light of the historical low increase in Wage Determinations. The Defense Contract Audit Agency ("DCAA") discussed the "non-escalation of wage determination rates" with NNSA's requestor of the audit. AR 1609. Based on that discussion, DCAA did not provide a cost impact of the non-escalation of the wage determination rates. Id. DCAA's report does not express an opinion as to whether and how much the rates should be escalated and NNSA did not seek DCAA's input on this issue. Id. In addition, Westech's proposal clearly stated that the 3% factor included merit pay increases. AR 1666.

Westech based its proposal on the most recent Wage Determination for the Las Vegas area, not the Wage Determination included in the Solicitation. AR 1609, 1664. The more recent WD was based on revised "Fifth Edition Occupational Titles" unlike the WD included in the Solicitation, therefore it is not possible to make a direct correlation of the wage categories between the two. For the purposes of estimating a reasonable escalation rate, however, it is possible to compare WD 1994-2331 Rev. 27 dated 5/23/2005 included the Solicitation (AR 41, 2322) to one published exactly one

year later: WD 1994-2331 Rev. No. 28 dated 5/23/2006.[10] There was no change in the labor rates during this one year period, and certainly not 3%. Therefore, Westech was prejudiced by NNSA's failure to select an escalation factor with some rational basis if NNSA believed it necessary to escalate SCA wages.

*E. Increase in Subcontract costs - $* XXXXX.

NNSA improperly increased Westech's subcontract costs in the amount of $ XXXXX by applying 3% escalation to subcontractor labor covered by Wage Determinations. AR 1869, 1958. The subcontract in question was Time-and-Materials type. AR 1637, 1724. The subcontractor was committed to supporting the contract at the proposed fixed hourly labor rates. NNSA erred in applying escalation at any amount to these positions. Even had it been reasonable to apply some escalation to these positions, 3% has no rational basis. *See discussion in D. above.*

Westech was prejudiced by all of the above adjustments to its cost proposal which lacked a rational basis, made critical miscalculations, and did not take into account available information. Westech, even after the $2.8 million increase to its cost, was still the lowest offeror. A change in even one of the items listed above would be sufficient to justify a re-evaluation of best value.

**2. <u>NNSA penalized Westech twice for the same evaluated deficiency by decreasing Westech's technical score and also increasing Westech's probable cost</u>.**

---

[10] Both Wage Determinations are available online from the Labor Department at www.wdol.gov.

In the Final Evaluation Report, NNSA rated Westech on Criterion 2 - Technical Capability as GOOD with a score of 31.20 or 78%. AR 1943. The major reason for this relatively low rating was Westech's perceived under-staffing. NNSA did not assert that Westech's offering 2.5 fewer FTE than the Government Estimate showed a lack of understanding of the technical requirements of the Statement of Work. Nevertheless, NNSA rated Westech's Technical Approach as Significant Weakness. AR 1943. In the criterion of Technical Capability, the SSA mentioned only one other concern with Westech's proposal: "Westech's approach to VAs could compromise the role of the Federal personnel in providing independent oversight of the contractor." AR 1947.

Other than the staffing and Federal personnel issues, NNSA found that:

> Westech proposed a comprehensive approach to SSSP, Physical Fitness Training Unit, and Pass and Badging. Westech's proposed approach to OPSEC, Security Classification Administrative Support and Other Security Support generally explained what Westech would do to meet these requirements. . . . Westech proposed a comprehensive approach to the identification of potential risks for all SOW elements and a minimization strategy for each of the identified risks.

AR 1947. In other words, the most significant reason for rating Westech's Technical Approach "Significant Weakness" was the difference in proposed staffing versus the government's estimate of staffing.

The Source Selection Authority ("SSA") especially emphasized the "shortfall" in Westech's proposed staffing saying:

> Westech did not clearly explain its proposed deviation to the Government staffing estimate to accomplish four elements of the Statement of Work. Accordingly, I am concerned that Westech's shortfall in its proposed staffing without adequate explanation could adversely affect successful performance of these SOW elements. . . .
>
> I find that Westech's overall technical approach increases the risk of unsuccessful contract performance. Specifically, Westech's labor understaffing, without adequate explanation, is a very serious concern of mine.

AR 1987.

NNSA increased Westech's costs to account for the additional personnel that the government believed would be required. This included $ XXXXX to change an administrative position to a Subject Matter Expert, $ XXXXX to add 0.8 FTE of a consultant, and $ XXXXX to add 1.7 FTEs to match the government estimate for a total increase of $ XXXXX.

The FAR requires that the government's estimate of probable cost be used for purposes of evaluation to determine the best value. 48 CFR §15.404-1(d)(2)(i). The problem here, however, is that the costs added by the government mitigated most of the deficiencies identified by NNSA in Westech's technical approach. The evaluators did not take into account the fact that merely by adding the FTE included in the estimated probable cost, Westech would be able to perform more effectively (in the government's estimate). That is, if NNSA believed that Westech's proposal was deficient because of understaffing, the probable cost corrected that deficiency and, therefore, the technical score should not have also penalized Westech for too few FTEs. Had Westech's proposal been evaluated at the higher labor level in the probable cost, the Technical Approach score should have been considerably higher than "Significant Weakness."

Although the Solicitation stated that there were no subcriteria, NNSA identified and evaluated "indicators" within each criterion. AR 65-66. Agencies are required to identify in a solicitation "all significant factors and significant subfactors . . . and . . . the relative importance assigned to each of those factors and subfactors." 41 USC §253a(b)(1). NNSA stated that the "indicators" were listed in "descending order of importance." AR 65. NNSA evaluated four areas under Criterion 2 – Technical Capability. AR 2340-41. In the four "indicators" under Technical Capability, Westech

received two "Significant Strengths" (Corporate Experience, Transition Plan), one "Strength" (Nucleus of Skilled Employees), and one "Significant Weakness" (Technical Approach.) AR 1943.

In describing the elements of Technical Capability, the Solicitation stated :

> (1) The Offeror's technical approach to successfully accomplish the SOW including whether the Offeror's technical approach demonstrates a thorough understanding of any technical risks and their impact associated with performance of the contract, as well as Offeror's approach for minimizing those risks.

AR 65 (emphasis added). Within the technical approach "indicator" under Criterion 2 - Technical Capability, NNSA evaluated proposals in each of eight SOW areas. AR 1943-1947. The RFP did not indicate that one area of the SOW would be more heavily weighted than another. Where no weights are published for significant subfactors, the Government Accountability Office ("GAO") has held that each subcriterion under a particular Criterion is accorded equal weight. Bio-Rad Laboratories, Inc., B-297553, 2006 U.S. Comp. Gen. LEXIS 232; Foundation Health Fed. Servs., Inc., Humana Military Healthcare Servs., Inc., B-278189.3, B-278179.4, 98-CPD ¶51, *see also* Dismas Charities, Inc. v. United States, 61 Fed. Cl. 191, 206 (2004) (Where RFP did not state subfactor weights, it was acceptable for agency to use equal weights for each subfactor.)

The evaluators noted only one deficiency in Westech's technical approach other than staffing: the use of Federal personnel in conducting VAs. AR 1947. This single deficiency in one of eight areas of the SOW should not alone result in an overall rating of "Significant Weakness" for the Technical Approach subfactor. This one deficiency, even if sufficient to rate a "Significant Weakness" in the VA area, represents only 1/8 of the Technical Approach score – surely not enough to justify a rating of "Significant Weakness" overall.

NNSA rated Westech's proposal overall as GOOD with a point score of 84.15, 0.85 short of the cut off for EXCELLENT. AR 1908, 1910. A reasonable adjustment to Westech's score to delete the impact of the perceived staffing "shortfall" would have easily raised Westech's overall score to EXCELLENT. Had NNSA made an upward adjustment in Westech's technical score to account for the addition of personnel in the Probable Cost, Westech would have presented the offer of the best value to the government. On the other hand, had NNSA evaluated the proposal as submitted, Westech's far lower price should have been compared to the technical score in determining best value.

The approach used by NNSA –both increasing the costs and lowering the score – penalized Westech twice for the same perceived deficiency. Westech was prejudiced by this double penalty.

**3. <u>Westech was prejudiced by the actions of NNSA</u>.**

Westech was the lowest offeror in the competitive range, even after NNSA's probable cost adjustments. Westech was prejudiced by NNSA's increases in its probable costs which lacked a rational basis as discussed above. Had NNSA not added costs in one or more of the five areas discussed above, then Westech would most likely have presented the best value to the government, based a rational probable cost and Westech's evaluated technical capability.

Cost to the Federal Government must be included as an evaluation factor that must be considered in the evaluation of proposals. 41 USC §253a(c)(1)(B). NNSA noted in the Solicitation that "The Cost Evaluation Criteria is significantly less important than Evaluation Criteria 1 through 3." AR 64-65. Nevertheless, NNSA is required to conduct

a trade-off analysis between cost and non-cost factors before accepting other than the lowest priced proposal. 48 CFR §15.101-1(c). Here, NNSA reduced the difference between PAI's proposal and Westech's proposal from $ XXXXX to $ XXXXX by changes to Westech's proposed cost which lacked a rational basis. If even one of the five areas discussed above is found to be without a rational basis, then the calculus of the required trade-off will change.

Westech was further prejudiced by NNSA's lowering its technical score on the basis of insufficient staffing and then increasing its costs to provide sufficient (in NNSA's opinion) staffing. This double penalty was arbitrary and capricious and lacked a rational basis. Had Westech's proposal been evaluated either on the original cost and staffing or the altered probable cost and staffing, Westech would most likely have presented the best value to the government.

## CONCLUSION

For the reasons stated above, Westech requests that the Court find that NNSA's award of a contract under the Solicitation to PAI was arbitrary, capricious, an abuse of discretion, and not in accordance with the law; permanently enjoin PAI's performance of the contract; direct NNSA to reevaluate offers under the Solicitation and make a new award decision which conforms to the facts and the law; grant plaintiff costs and fees incurred in pursuing this action to the extent permitted under law and its bid and proposal expenses incurred in responding to the Solicitation; and grant such other an further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Carolyn Callaway
Attorney for Westech International, Inc.
CAROLYN CALLAWAY, P.C.
P.O. Box 50099
Albuquerque, NM 87181-0099
(505) 291-9774
(505) 292-0144 – facsimile
ccwes@aol.com

Dated: May 14, 2007

CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of May, 2007, a copy of the foregoing PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Carolyn Callaway
Attorney for Westech International, Inc.